**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**UNITED STATES ex rel**                         No. 05-CV-759 (DSD/SRN)

**Neil P. Thompson, et al.,**
                          **Plaintiffs,**

                                              **REPORT & RECOMMENDATION**

          v.

**Walgreen Co.,**
                          **Defendant.**

_____

          Robert P. Christensen, Robert P. Christensen, P.A., 670 Park Place East, 5775 Wayzata
Blvd., St. Louis Park, Minnesota 55416; Brian Wojtalewicz, Wojtalewicz Law Firm, Ltd., 139
North Miles, Box 123, Appleton, Minnesota 56208; James G. Vander Linden, LeVander &
Vander Linden, P.A., 670 Park Place East, 5775 Wayzata Blvd., St. Louis Park, Minnesota
55416, for Plaintiffs

          Melissa M. Thompson, Fulbright & Jaworski, L.L.P., 801 Pennsylvania Ave. NW,
Washington, DC 20004; Kelly A. Moffit, Fulbright & Jaworski, L.L.P., 2100 IDS Center, 80
South Eighth Street, Minneapolis, Minnesota 55402, for Defendant.

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

          This case is before the undersigned United States Magistrate Judge on Plaintiffs' Motion

for Attorneys' Fees and Costs (Doc. No. 50).  This matter has been referred to the undersigned

pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

**I.      BACKGROUND**

          Plaintiffs filed this qui tam civil action for violations of the False Claims Act ("FCA"),

31 U.S.C. §§ 3729-33, which allows the United States to seek treble damages and civil penalties

against any person who knowingly presents a false or fraudulent claim for payment to the federal

government.  The FCA allows private citizens, known as relators, to bring an action for the

government and share a percentage of the government's recovery.[1]  Relators here, Neil

Thompson and Daniel Bieurance, are licensed pharmacists who have worked for Defendant

Walgreen Co. ("Walgreen").  They commenced this qui tam action on April 26, 2005, alleging

that Defendant submitted erroneous bills for prescription drugs to Medicaid on behalf of persons

who were dually insured by Medicaid and third-party insurance.  The government intervened and

the action was ultimately settled on September 18, 2008, with Defendant paying $9.9 million to

settle the claims against them for false Medicaid payments in the states of Minnesota, Michigan,

Massachusetts and Florida.

Under § 3730(d) of the FCA, if the government chooses to intervene, and a sum of

money is collected from the defendant as a result of the ensuing action or settlement, the relator

is to receive at least 15-25% of the proceeds of the collected sum and an amount for reasonable

expenses, including reasonable attorneys' fees and costs.  31 U.S.C. § 3730(d).  The federal

government's share of the $9.9 million settlement in this case was $4,846,285 and Plaintiffs'

share of this amount was $920,794, representing 19% of the federal government's share.  (Reply

Aff. of R. Christensen at ¶ 2.)  As part of the settlement agreement, Defendant agreed to pay the

reasonable expenses and fees of Plaintiffs' counsel "pursuant to 31 U.S.C. § 3730 (d), as

determined by agreement or by the Court hearing the Civil Action."  (Robinson Dec. ¶ 3.)

---

[1]The Court notes that the terms "plaintiffs" and "relators" have both been used during
this litigation to refer to Messrs. Thompson and Bieurance and the Court uses the terms
interchangeably in this Report & Recommendation.

Plaintiffs/Relators claim legal fees and expenses as follows:

| | | |
|---|---|---|
| A. | Wojtalewicz Law Firm, Ltd. fees | $132,750.00 |
| B. | LeVander & Vander Linden, P.A. fees | $155,333.60 |
| C. | Robert P. Christensen, P.A. fees | $160,150.76 |
| | **Attorney's Fees Total** | **$448,234.36**[2] |
| D. | Costs | $24,041.72[3] |
| | **Attorney's Fees & Costs Total** | **$472,777.84** |

Defendant objects to Plaintiffs' counsel's requested fees and costs and seeks an overall reduction in fees in the range of 50-65% for Attorney Wojtalewicz and 50-75% for Attorneys Christensen and Vander Linden.

## II.   DISCUSSION

The party seeking a fee award should submit evidence supporting the hours worked and the rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Where the documentation of hours is inadequate, the court may reduce the award accordingly." Id. Similarly, the court may also exclude from the initial fee calculation hours that were not 'reasonably expended.' Id. (citation omitted).

The starting point for an award of attorneys' fees involves determining the "lodestar," which supplies an "initial estimate" of the appropriate amount to award. Blum v. Stenson, 465 U.S. 886, 888 (1984). There is a "strong presumption" that the lodestar figure represents the reasonable fee to be awarded. City of Burlington v. Dague, 505 U.S. 557, 562 (1992). To calculate the lodestar amount, the Court must multiply the reasonable number of hours expended

---

[2]Christensen Aff. at ¶ 12, Doc. No. 53.

[3]Christensen Aff. at ¶ 12, Doc. No. 53; Christensen Reply Aff. at ¶ 6, Doc. No. 72.

by a reasonable hourly rate for each attorney performing the work.  Id. at 559-60 (citation

omitted). That amount must then be adjusted upward or downward "on the basis of the results

obtained." Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir.2003)

(citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  Upward enhancements of the lodestar

amount are warranted only in "rare" and "exceptional" cases, supported by specific evidence and

detailed findings.  Blum, 465 U.S. at 899-901.

In determining a reasonable fee, the Court may, but is not required to, consider the

following factors:

(1) the time and labor involved;

(2) the novelty and difficulty of the question;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to the acceptance of the
case;

(5) the customary fee;

(6) whether the fee is fixed for contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client;

(12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3 (citing the "Johnson factors"set forth in Johnson v. Georgia

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

In Hensley the Supreme Court stated that the level of a plaintiff's success is relevant to

the amount of fees to be awarded.  Id. at 430.  There is no precise rule for making these determinations and a district court may attempt to identify particular hours that should be eliminated, or it may simply reduce the award to account for limited success.  Hensley, 461 U.S. at 436-37.

The Court has conducted a detailed review of the time records submitted by the three attorneys, as well as the accompanying affidavits.  The Court has also thoroughly reviewed Defendant's objections submitted in response to the motion brought by Plaintiff's counsel.

### A.       Reasonableness of Attorneys' Billing Rate

In determining the award of attorneys' fees, the Court must assess the reasonableness of the attorneys' hourly rates.  Defendant does not challenge the hourly rates charged by Plaintiffs' counsel.  Plaintiffs' counsel, Robert P. Christensen, Brian Wojtalewicz and James G. Vander Linden, submitted affidavits setting forth their education, experience and hourly rate of $500 per hour.  (Affs. of R. Christensen, B. Wojtalewicz and J. Vander Linden, Doc. Nos. 53-55.)  In addition, they submitted supporting affidavits from colleagues in their respective legal communities attesting to the reasonableness of their hourly rates. (Affs. of G. Laurie, J. Schermer, J. Kaster, C. Messerly and R. Bennett, Doc. Nos. 56-60.)  Given the training, experience and skill level of Plaintiffs' counsel, the Court believes that the hourly rates charged by these attorneys are reasonable and are consistent with the prevailing market rates for lawyers of their skill levels. See Blum, 465 U.S. at 895 n. 11 (reasonable hourly rate is prevailing market rate in relevant legal community for similar services by lawyers of comparable skills, experience and reputation).

### B.       Reasonableness of Hours Expended

As to the reasonableness of the hours expended – the second factor in determining the

lodestar – Defendant challenges billing submissions of Plaintiffs' counsel, claiming that certain billings should be non-compensable because they reflect: (1) excessive, redundant or unnecessary work; (2) work done on unrelated claims; (3) billing for recovery of the relator's share from the government; and (4) incomplete and/or imprecise billing. The Court addresses each of these issues in turn.

### 1.    Excessive, Redundant or Unnecessary Work

Defendant argues that a substantial number of entries in Plaintiffs' bills involve multiple billing by senior-level attorneys.  In addition, Defendant contends that the bills contain entries reflecting that senior-level attorneys billed for tasks that should have been performed by junior-level attorneys.  Defendant requests that the Court consider a reduction in overall fees of 50% for excessive, redundant or unnecessary entries, including fees billed at an inappropriately high level for the task, entries involving de minimis tasks and involvement of multiple attorneys.

### a.    Legal Research

Defendant objects to compensating Plaintiffs' counsel for work billed for tasks that Defendant contends should have been performed by junior-level attorneys.  Defendant cites the following examples: "research law on Code of Federal Regulations for Medicaid payments" (BEW 10/27/05); "legal research re: venue" (RPC 9/28/05); "review of attorney fees cases re: attorney fee & issue" (JGV 7/29/08).[4]  (Def.'s Mem. in Resp. at 7.)   While Defendant acknowledges that Plaintiffs' counsel hail from smaller firms that may lack associate-level attorneys, Defendant nonetheless argues that counsel should have adjusted their billing to reflect de minimis legal research.

---

[4]Billing entries throughout this Report & Recommendation identify Plaintiffs' counsel by their respective initials: RPC (Robert P. Christensen); BEW (Brian E. Wojalewicz); and JGV (James Vander Linden).

In <u>Miller v. Holzmann</u>, 575 F.Supp.2d 2, 43 (D.D.C. 2008), defendants objected to counsel's billing submissions for research, to which the attorney in question responded.  The <u>Miller</u> court cited with approval the attorney's defense of time submissions regarding legal research:

> Experts in substantive practice areas are still required to conduct "research" (indeed, a lawyer would be negligent if he or she did not conduct "research") to determine the current state of the law[,] and no practitioner would be expected to know all answers to legal questions, even within the practitioner's area of expertise. Moreover, regardless of an attorney's level of expertise, the pertinent authorities need to be referenced and researched when briefing or considering the legal issues in the case. This time will be described as "research." Undertaking "research" does not mean that the attorney involved is undertaking basic research on the substantive law. In my opinion, and in my practice, it is customary for attorneys at all levels to review case law – to do "research" – as it becomes relevant for the task they are performing.

<u>Miller v. Holzmann</u>, 575 F.Supp.2d 2, 43 (D.D.C. 2008).

As a practical matter, Plaintiffs' counsel do not all have associates readily available to conduct research, as in larger firms.  While Plaintiffs' counsel conducted legal research, it also appears that the LeVander & Vander Linden firm hired law clerks to conduct some research and their work was billed at an hourly rate commensurate with the law clerks' experience.  Given the fact that attorneys – particularly solo practitioners and those from smaller firms – conduct legal research throughout their careers, the Court concludes that Plaintiffs' counsel should be compensated for research.

The following billing submission from Attorney Christensen, however, should not be compensable: RPC, 9/21/2006, "review email re: new Lexis password, $50," as it does not relate to actual legal research.

A caveat to this general ruling is that if the subject matter of the research concerns another category otherwise deemed non-compensable within this Report & Recommendation,

then that research time is likewise non-compensable, as identified in this Report &

Recommendation.

### b.     Multiple Billing

Defendant argues that fees for Plaintiffs' counsel should be reduced to reflect

"overlawyering," or work that Defendant believes involved an unnecessary number of attorneys.

In <u>Hensley</u>, Justice Powell explained that it is incumbent upon attorneys to exercise "billing

judgment" with respect to hours worked:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely.
> Counsel for the prevailing party should make a good faith effort to exclude from a
> fee request hours that are excessive, redundant, or otherwise unnecessary, just as
> a lawyer in private practice ethically is obligated to exclude such hours from his
> fee submission. "In the private sector, 'billing judgment' is an important
> component in fee setting. It is no less important here. Hours that are not properly
> billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to
> statutory authority."

<u>Hensley</u>,  461 U.S. at 434 (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980) (en

banc) (emphasis in original)).

Defendant has highlighted numerous instances in which all three attorneys, or more than

one attorney, have submitted a claim for compensation for the same activity, on the same day.[5]

For example, all three attorneys have submitted billing entries for work done on 4/9/2005 with

the approximate description, "review memo and attachments from Neil re: new FCA case."

Attorneys Christensen and Vander Linden collectively billed $500 for that work and Attorney

Wojtalewicz's block billing entry "reviewed memo and attachments from Neil; work on

Complaint and Initial Disclosure" makes it impossible to determine how much of his $1150

---

[5]Defendant's counsel identified with a bullet point ("•") those entries which it considered
duplicative. (Def.'s Ex. 1, 3/2/09 Motions Hearing on Plaintiffs' Motion for Attorneys' Fees and
Costs).

charge is apportioned to the review of Neil Thompson's memo and attachments.

Plaintiff contends that the three attorneys joined together in order to share their collective experience as well as the collective risk of handling this litigation. Medicare reimbursement and billing is complicated, Plaintiff's counsel argues, and qui tam cases are typically novel, involving complex questions of law.

The Court recognizes that this case involved novel issues, frequent contacts with governmental agencies at the state and federal level and close communication with Plaintiffs and between counsel. Certainly, at specific times during the course of litigation, the collaborative work of a group of attorneys is necessary. The example above, regarding the review of Mr. Thompson's memo and attachment, occurred at the outset of this litigation and is the type of early work for which a group of attorneys might reasonably bill. Likewise, near the end of the litigation, or at other crucial times during the litigation, it may be reasonable for attorneys to seek each other's counsel and to be fully compensated for that work.

At other times, however, it is more reasonable for one or two attorneys to attend to a given task. As another example, billing entries for 12/29/2005 reflect that the three attorneys billed for a conference call regarding Plaintiffs' potential confrontation by Defendant, as well as the preparation or follow-up work related to the conference call, for a total submission of $1875. Although Plaintiffs' counsel undoubtedly needed to keep abreast of events in the case, this is but one example where time should have been written off or discounted in light of duplicative effort.

On balance, the Court finds that some reduction for duplication of effort is warranted, although not to the degree sought by Defendant. This case involved complicated Medicare billings, efforts to encourage other states or the federal government to become involved and frequent client contact. In some instances, however, considering the level of experience of the

attorneys involved, counsel could have exercised better billing judgment by streamlining some tasks or discounting time.  The Court recommends a total reduction of $5,000 for duplication of effort, to be apportioned equally between Plaintiffs' counsel.

### 2.      Work Done on Unrelated Claims

Where a plaintiff fails to prevail on a claim that is distinct in all respects from his successful claim, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  <u>Hensley,</u> 461 U.S. at 440.  Defendant argues that certain tangential billing submissions should not be compensated because: (1) the submissions relate to contacts with the media; (2) the submissions relate to contacts with other states which did not ultimately join in the qui tam action; (3) the submissions relate to attempts by Plaintiff Thompson to obtain a severance agreement from Defendant Walgreens and/or the tax implications of settlement.

### a.      Communication with Media

Defendant objects to Plaintiff's billing submissions that reflect its communications with the media.  The Court agrees that this type of time expenditure is not substantive legal work designed to advance the qui tam litigation, rather it is work in the nature of marketing, which is not compensable.

Accordingly, the Court holds that the following time entries related to communication with the media should not be compensable:

- RPC; 9/29/2008; "review emails and press releases; phone call with Brian Wojtalewicz; meeting with Jim Vander Linden; email to CNN; $500."

- RPC; 9/29/2008; "various calls and emails to news sources; $1,000."

- RPC; 10/3/2008; "conference with Neil Thompson, Brian Wojtalewicz, Jim

Vander Linden and photographer and reporter at Neil Thompson office; $1,000."

- BEW; 9/29/2008; "issue press releases and communicate with members of the media and co-counsel and clients; $100."

- BEW; 9/30/2008; "telephone conference with counsel and client Neil Thompson on media contacts; $100."

- BEW; 9/30/2008; "telephone conference with Minneapolis Star Tribune reporter and email; $150."

- BEW; 10/1/2008; "telephone conference from reporter from RX Compliance and email to him; $150."

- BEW; 10/1/2008; "telephone conference with Michelle Lore of MN Lawyer; $100."

- BEW; 10/1/2008; "assemble papers and prepare for meeting with Star Tribune reporter; $250."

- JGV; 1/4/2006; "review of email re: media damage control; $100."

These entries amount to a total reduction of $3450 from the submitted attorneys' fees; $2500 of that sum is apportioned to Attorney Christensen; $850 to Attorney Wojtalewicz; and $100 to Attorney Vander Linden.

### b.    Contacts with Other States

The states involved in this qui tam action and consequent settlement included Minnesota, Michigan, Massachusetts and Florida.  At various times, Plaintiffs' counsel contacted other states' attorneys general and local counsel to discuss their potential involvement in the litigation. Some of those states chose not to litigate and their Medicaid programs were therefore not at issue in the settlement agreement.   For example, while Indiana at one point participated, it was not

ultimately a party to the settled litigation.[6]

In <u>Hensley</u>, the Supreme Court distinguished the situation in which a plaintiff presents, in one lawsuit, distinctly different claims for relief based on different facts and theories from the situation in which a plaintiff's claims involve a common core of facts or claims based on related legal theories.  461 U.S. at 434-35.  In the former situation, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'  <u>Id.</u> (citation omitted).  However, in the latter situation, where the lawsuit cannot be viewed as a series of discrete claims, the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  <u>Id.</u>

Here, the billing entries in question represent time counsel spent contacting representatives of other states who were not parties to this litigation.  While those states and their representatives may have contemplated joining the litigation, ultimately they did not join or did not remain in the litigation, and therefore the Court recommends that no fee be awarded for these contacts.  Rather, counsels' compensable time should be limited to work related to the states which joined and remained in the litigation through settlement – Minnesota, Michigan, Massachusetts and Florida.

The Court finds that the following billing entries should therefore be non-compensable, or a portion should be non-compensable, as indicated below, for a total reduction of $18,638:[7]

---

[6]Therefore, the Court's discussion of billing entries related to Indiana, <u>infra</u>, indicate that Indiana was not involved in this litigation.

[7]This total amount is apportioned as follows: $7698 is deducted from Attorney Christensen's submission; $3455 is deducted from Attorney Wojtalewicz's submission; and $7485 is deducted from Attorney Vander Linden's submission.  The Court notes that where counsels' block billing entries include work that is compensable, the Court has apportioned the entry to reflect both compensable and non-compensable time.

- RPC; 10/14/2005; "research – personal and subject matter jurisdiction, pendent jurisdiction, venue, false claims statutes for Massachusetts, Florida, Arkansas and New Mexico; $2000."  Because only Massachusetts and Florida were part of this litigation, this billing entry shall be reduced by 50%, or $1000.

- RPC; 2/14/2006; "review research re: Indiana, Arkansas and Michigan; $200." Because only Michigan was a part of this litigation, the billing entry will be reduced by 66%, or $133.

- RPC; 5/1/2006; "conference call with counsel and phone call with Larry Setchell re: recommendations of counsel in MA, FL, ID and MI; $750."  Because Idaho was not involved in this litigation, this billing entry will be reduced by 25%, or $188.

- RPC; 5/2/2006; "phone calls to attorneys in MA, FL, ID and MI; $750."  Because Idaho was not involved in this litigation, this billing entry will be reduced by 25%, or $188.

- RPC; 5/11/2006; "review and comments on IN complaint; $250; non-compensable.

- RPC; 6/1/2006; emails and phone calls to counsel in MI, MA and IN; $375." Because Indiana was not involved in this litigation, this billing entry will be reduced by 33%, or $125.

- RPC; 6/1/2006; "emails to IN and MA potential counsel; $125."  Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $63.

- RPC; 6/2/2006; "review MI and IN revised complaints and email to group with

13

comments; $250." Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $125.

• RPC; 6/2/2006; "draft emails to IN and MA local counsel and enclose Special Retainer Agreement; $150." Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $75.

• RPC; 6/5/2006; "phone call with Brian re: IN attorney concerns; conference with Cindy Christensen re: file organization; review emails from local counsel; $500." Because Indiana was not involved in this litigation, this billing entry will be reduced by 33%, or $167.

• RPC; 6/9/2006; "organize and mail IN and FL materials to counsel; draft letters; $1000." Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $500.

• RPC; 6/10/2006; "review and revise letter to New Mexico; web search re: Department of Human Services; email to Office of Inspector General; $200." New Mexico was not involved in this litigation. It is impossible for the Court to determine if the "Department of Human Services" and the "Office of Inspector General" refers to the United States or New Mexico offices. Accordingly, this time is non-compensable.

• RPC; 6/13/2006; "review Indiana revised complaint by Brundage and forward to counsel; $150." Because Indiana was not involved in this litigation, this time is non-compensable.

• RPC; 6/14/2006; "review email from Corey Brundage re: filing of complaint and service on AG and Inspector General; $100." Because Indiana was not involved

14

in this litigation, this time is non-compensable.

- RPC; 6/20/2006; "review letter from Corey Brundage and materials from IN filing; letter to FCA group re: Brundage letter and copies; $250." Because Indiana was not involved in this litigation, this time is non-compensable.

- RPC; 6/21/2006; "phone call to New Mexico Office of Inspector General; $150." Because New Mexico was not involved in this litigation, this time is non-compensable.

- RPC; 6/21/2006; "phone call to New Mexico Medicaid Fraud Unit; review email; $125." Because New Mexico was not involved in this litigation, this time is non-compensable.

- RPC; 6/22/2006; "review and revise letter to New Mexico Human Services and enclosures; post office re: certified mail; $750." Because New Mexico was not involved in this litigation, this time is non-compensable.

- RPC; 6/30/2006; "review NM service and calls and conference with Cindy Christensen re: new service; phone call to Tim Lynch; letter to Tim Lynch and email to Tim Lynch re: filing of MA complaint and service of disclosure on AG; $500." Because New Mexico was not involved in this litigation, this billing entry will be reduced by 33%, or $167.

- RPC; 8/17/2006; "email to counsel re: Indiana AG; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 8/21/2006; "review email to Indiana AG; $50." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 8/23/2006; "phone call with Brian re: contact in New Mexico and fax

service letter to Brian; $125." Because New Mexico was not involved in this litigation, this billing entry is non-compensable.

- RPC; 8/23/2006; "review email from Brian re: conversation with IN AG; $125." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 8/30/2006; "phone call with Cory Brundage re: conference call with the court; Indiana; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 8/31/2006; "phone call with Cory Brundage secretary, Donna; phone call with Ed Miller, IN AG office; email to counsel re: conference call tomorrow; Indiana; $400." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 9/1/2006; "conference call with Court re: Motion to Extend seal; Indiana; $250." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 9/3/2006; "review timing of IN suit; Indiana; $50." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 9/3/2006; "review Mike Winkleman email re: staffers he has worked with in IN; Indiana; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 9/3/2006; "review notes from phone conference with court; memo to file; and email to clients and counsel; Indiana; $200." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 9/3/2006; "review email re: status of discussions with AG office; New Mexico; $50." Because New Mexico was not involved in this litigation, this billing entry is non-compensable.

- RPC; 9/19/2006; "review Texas statute allowing claims involving Medicaid Fraud; $150." Because Texas was not involved in this litigation, this billing entry is non-compensable.

- RPC; 10/11/2006; "review Brundage invoices and send to counsel; Indiana; $50." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 10/16/2006; "phone call to AG; Indiana; $50." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 10/17/2006; "phone call with Ed Miller, AG in IN; email to group; memo to file; Indiana; $250." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 11/13/2006; "review email from Corey Brundage re: pro hac vice; email from Brian and phone call with Jim Vander Linden; email to Corey re: go ahead with pro hac vice admission for us; Indiana; $125." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 12/5/2006; "review IN reg issue and email to Neil re: Winkelman involvement; Indiana; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 12/5/2006; "review emails from Brian re: IN dismissal without prejudice; phone call with Brian; Indiana; $100." Because Indiana was not involved in this

litigation, this billing entry is non-compensable.

- RPC; 12/11/2008; "review emails re: motion to dismiss without prejudice and revise language in motion; review emails re: pro hac vice; Indiana; $200." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 12/15/2006; "phone call with Brian re: sending extension order to NM, FL and MA; $50." Because New Mexico was not involved in this litigation, this billing entry will be reduced by 33%, or $17.

- RPC; 12/15/2006; "review emails regarding Joint Motion to Dismiss in IN action; review motion and order; Indiana; $200." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 12/18/2006; "review of email regarding IN case; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- RPC; 12/20/2006; "review of IN order; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- BEW; 10/21/2005; "review legal research from Vander Linden Law Firm concerning Medicaid rules in Arkansas, Florida, Massachusetts and New Mexico; $250." Because Arkansas and New Mexico were not involved in this litigation, the billing entry will be reduced by 50%, or $125.

- BEW; 11/3/2005; "draft amended complaint and research law for states of New Mexico, Florida and Massachusetts; $900." Because New Mexico was not involved in this litigation, this billing entry will be reduced by 33%, or $300.

- BEW; 1/15/2006; "email from Attorney Vander Linden on Arkansas statute and

email from Attorney Christensen; $50." Because Arkansas was not involved in this litigation, this billing entry is non-compensable.

- BEW; 2/14/2006; "review emails from client and co-counsel on upcoming meeting and further legal research on Michigan and Indiana rules and Arkansas statute; $150." Because Arkansas was not involved in this litigation, this billing entry will be reduced by 33%, or $50.

- BEW; 5/8/2006; "prepare FCA civil Complaint drafts for the states of Florida, Indiana, Michigan and Massachusetts; $1,150." Because Indiana was not involved in this litigation, this billing entry will be reduced by 25%,or $288.

- BEW; 5/24/2006; "emails from client and co-counsel regarding Michigan and Indiana law for the formal FCA Complaints for those 2 states; $250." Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $125.

- BEW; 5/24/2006; "review email from client Neil and the New Mexico Medicaid manual contents; $50." Because New Mexico was not involved in this litigation, this billing entry is non-compensable.

- BEW; 5/25/2006; "review emails from co-counsel and respond; review letter and legal research on Indiana and Michigan from co-counsel; $250." Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $125.

- BEW; 6/3/2006; "review emails of Attorney Bob C. and Indiana counsel; email from Attorney Jim the concerns on retainer; $100." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- BEW; 6/5/2006; "email to counsel on Indiana attorney concerns; $50." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- BEW; 6/9/2006; "review Attorney Bob C's communications with Indiana and Florida counsel, $50." Because Indiana was not involved in this litigation, this billing entry will be reduced by 50%, or $25.

- BEW; 6/12/2006; "review email from Attorney Bob C. to New Mexico IG and email to clients; response from Neil: new seal extension and status/damages concerns; $100." Because New Mexico was not involved in this litigation, this billing entry is non-compensable.

- BEW; 6/13/2006; "review email from Indiana co-counsel and email to counsel; email from Attorney Bob C. to Indiana Counsel and response; revise complaint draft and review, $150." Because Indiana was not involved in this litigation, this billing entry is non-compensable.

- BEW; 6/20/2006; "review emails from Bob Christensen concerning service and filing completed in Indiana, and progress with attorneys in Michigan and Florida, $100." Because Indiana was not involved in this litigation, this billing entry will be reduced by 33%, or $33.

- BEW; 6/22/2006; "review email of co-counsel to Boston Layer, and email concerning cover letter to New Mexico Human Services Dept. that is being mailed the same date; $50." Because New Mexico is not involved in this litigation, this billing entry will be reduced by 50%, or $25.

- BEW; 8/17/2006; "review email from Attorney Bob C. on Indiana AG contact; $50." Because Indiana is not involved in this litigation, this billing entry is non-

compensable.

- BEW; 8/17/2006; "review email from Attorney Jim V. on Michigan filing concern and Indiana status; $50." Because Indiana is not involved in this litigation, this billing entry will be reduced by 50%, or $25.

- BEW; 8/18/2006; "wrote letter to Asst. Indiana AG on extension of seal; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 8/18/2006; "attempts to contact New Mexico Medicaid official; $50." Because New Mexico is not involved in this litigation, this billing entry is non-compensable.

- BEW; 8/22/2006; "attempts to contact New Mexico Medicaid official; $50." Because New Mexico is not involved in this litigation, this billing entry is non-compensable.

- BEW; 8/22/2006; "emails to counsel and clients: my contacts with Asst AGs in Indiana, Florida and associate counsel on Mass. on status of case; $200." Because Indiana is not involved in this litigation, this billing entry will be reduced by 33%, or $67.

- BEW; 8/23/2006; "wrote letter to NM Medicaid official with case description; $100." Because New Mexico is not involved in this litigation, this billing entry is non-compensable.

- BEW; 8/24/2006; "review motion for time extension by Asst. AG, Indiana; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 8/25/2006; "telephone conference with NM Medicaid official and email to clients and counsel; $150." Because New Mexico is not involved in this litigation, this billing entry is non-compensable.

- BEW; 9/3/2006; "email from Attorney Bob C. on deadlines on Florida, Indiana and Mass.; $50." Because Indiana is not involved in this litigation, this billing entry will be reduced by 33%, or $17.

- BEW; 9/5/2006; "review email from Attorney Bob C. on conference with IN Asst. AG and co-counsel and status of case; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 9/11/2006; "review IN order extending seal; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 9/19/2006; "review letter from Attorney Vander Linden and legal research on TX Medicaid rules; $100." Because Texas is not involved in this litigation, this billing entry is non-compensable.

- BEW; 9/22/2006; "review letter from Attorney Vander Linden and legal research on TN Medicaid rules; $100." Because Tennessee is not involved in this litigation, this billing entry is non-compensable.

- BEW; 10/17/2006; "email to Attorney Bob C. on talking with Asst. IN AG; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 10/18/2006; "received letter from Attorney Vander Linden on billings from IN co-counsel; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 11/9/2006; "email to Indiana Asst. AG; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 11/13/2006; "email from Attorney Bob C. and email from Indiana co-counsel on local admission and filings; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 11/13/2006; "telephone conference with Asst. IN AG: expert consult and email to clients and counsel; $150." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 11/20/2006; "review letter from co-counsel in IN and affidavit drafts for admission; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 11/27/2006; "prepare affidavit for IN case and wrote letter to co-counsel; $100." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 12/5/2006; "telephone conference with Asst. AG, Indiana on stipulation to dismiss and wrote letter to him with documents; $150." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 12/6/2006; "emails with Ast. IN AG on joint motion and stip; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 12/11/2006; "review email and affidavits on admission in IN; $50." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 12/15/2006; "review emails from IN AG asst. and co-counsel on joint motion documents and attachments; $150." Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- BEW; 12/20/2006; "review order grant joint motion in IN; $50."  Because Indiana is not involved in this litigation, this billing entry is non-compensable.

- JGV; 8/24/2005; "telephone call with counsel re: FCA in Fla, NM and other states; $150." Because New Mexico is not involved in this litigation, this billing entry will be reduced by 33%, or $50.

- JGV; 8/24/2005; "telephone call with counsel re: FCA in Fla, NM and other states; $150." Because New Mexico is not involved in this litigation, this billing entry will be reduced by 33%, or $50.

- JGV; 1/11/2006; "telephone call to BC & NT re: Indiana and Mich FCAs, memo to J.T.; $400."  Because Indiana is not part of this litigation, this billing entry will be reduced by 50%, or $200.

- JGV; 1/13/2006; "review of email BEW; call to BEW re: Texas FCA/review of file; $500."  Because Texas is not part of this litigation and because the Court does not know the subject matter of "review of email BEW," this billing entry is non-compensable.

- JGV; 1/15/2006; "email to B.W. re: Arkansas FCA; $100."  Because Arkansas is not part of this litigation, this billing entry is non-compensable.

- JGV; 5/10/2006; "telephone call from B.W. re: Mich. and Ind. research; memo to law clerk; $400."  Because Indiana is not part of this litigation, this billing entry will be reduced by 50%, or $200.

- JGV; 5/22/2006; "emailed – Mich./Ind. research; $150." Because Indiana is not part of this litigation, this billing entry will be reduced by 50%, or $75.

- JGV; 5/22/2006; "review of various emails re: Mich. & Ind.; $400." Because Indiana is not part of this litigation, this billing entry will be reduced by 50%, or $200.

- JGV; 5/30/2006; "work with S.T. re: language for Mich./Ind. complaint; $750." Because Indiana is not part of this litigation, this billing entry will be reduced by 50%, or $375.

- JGV; 6/14/2006; "review of draft of Indiana Complaint; review email to AUSA; $250." Because Indiana is not part of this litigation and because the Court is unable to determine to what "review email to AUSA" refers, this billing entry is non-compensable.

- JGV; 6/21/2006; "review of 3rd app. to enlarge time/continue SEA; review Indiana material; $250." Because Indiana is not part of this litigation and because the Court is unable to determine whether "review of 3rd app. to enlarge time/continue SEA" refers work related to Indiana, this billing entry is non-compensable.

- JGV; 7/19/2006; "called Dan to sched. meeting, meeting with Dan to sign complaint, email to group re: Georgia stature [sic], email to N.T. re: signing of complaint; $900." Because Georgia is not part of this litigation, this billing entry will be reduced by 25%, or $225.

- JGV; 8/21/2006; "review of motion to extend seal – Indiana; $100." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 9/1/2006; "preparation for Indiana conference call; $250." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 9/18/2006; "review of research re: Texas Medicaid and FCA/review corresp. re: PHV motion; $750." Because Texas is not part of this litigation, this billing entry is non-compensable.

- JGV; 12/3/2006; "review of email re: seal expiration in Indiana; $100." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 12/4/2006; "review of email re: SOL issues and Indiana stay; $150." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 12/15/2006; "review of email regarding motion to dismiss – Indiana; $100." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 12/18/2006; "review of email re: Indiana case; $100." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 12/20/2006; "review of Indiana order; $100." Because Indiana is not part of this litigation, this billing entry is non-compensable.

- JGV; 5/15/2006; "legal research on issue of IN, MI statutes; $768." Because Indiana is not part of this litigation, this billing entry will be reduced by 50%, or $384.

- JGV; 8/10/2006; "state research Arizona; $672." Because Arizona is not part of this litigation, this billing entry is non-compensable.

- JGV; 8/11/2006; "AZ CLL; $480." Because Arizona is not part of this litigation,

this billing entry is non-compensable.

- JGV; 8/14/2006; "AZ; $1056."  Because Arizona is not part of this litigation and because this entry lacks any meaningful description, this billing entry is non-compensable.

- JGV; 10/27/2006; "respond to email re: search for state FCA in AL, HI, MS, SC; $96."  Because these states are not part of this litigation, this billing entry is non-compensable.

- JGV; 10/30/2006; "research CA rules; $320."  Because California is not part of this litigation, this billing entry is non-compensable.

- JGV; 11/03/2006; "research CA rules; $352."  Because California is not part of this litigation, this billing entry is non-compensable.

### c.    Severance Negotiations and Tax Implications of Settlement

Defendant objects to certain billing submissions that it describes as tangential to the case or that occurred after the settlement.  For example, Defendant cites to a November 6, 2008 billing entry from Attorney Vander Linden which states, "Call to Rick Robinson re: N.T. loa [leave of absence] & Severance; T/C with N.T. re: same." [8]  Defendant also objects to a billing entry regarding the tax implications of settlement.

Plaintiffs' counsel acknowledge that on November 6, 2008, Attorney Vander Linden and Attorney Christensen participated in a telephone conversation with Frederick Robinson, counsel for Defendant.  The conversation involved the topics of a severance agreement for Plaintiff Neil Thompson and the issue of settlement of Plaintiffs' claim for attorneys' fees.  Plaintiffs' counsel maintains that Mr. Robinson stated that these two issues must be a "package deal."  Plaintiffs'

---

[8]The Court presumes that "N.T." refers to Plaintiff Neil Thompson.

counsel also aver that this telephone conversation was a single occurrence.

In <u>Miller</u>, 575 F.Supp.2d at 25-26, the qui tam relator had named his then-current employer as a defendant.  In connection with his continued employment, the relator's counsel analyzed his potential liability for removing confidential documents, advised him on how to respond to an internal investigation and, most relevant here, counseled him on how to effectuate his eventual resignation.  <u>Id.</u> at 25.  Although the relator argued that these tasks were compensable because they were related to the representation of a whistleblower and the potential conflicts that arise from assisting the government, the Court disagreed: "'Related to representation of a whistleblower,' however, is not the standard in this Circuit for compensable time." <u>Id.</u>  The Court held, "advice concerning relator's employment status lacks even a tenuous connection to the qui tam litigation," noting, "relator does not attempt to explain, and the Court cannot surmise, how the 'resignation script' his attorneys prepared for him could <u>possibly</u> have served to advance the qui tam litigation." <u>Id.</u> at 25-26 (emphasis in original).  The <u>Miller</u> court therefore refused to compensate the relator's counsel for time expended on this type of task.

The Court finds that time spent on Plaintiff Thompson's severance did not advance the qui tam litigation, as the court in <u>Miller</u> also found, nor did time spent regarding the tax implications of settlement (RPC; 11/18/2008; "research on tax ramifications of FCA cases and emails to team; $250").  Plaintiffs' counsel, however, engaged in discussions of both Mr. Thompson's severance and the settlement of the attorneys' fees as a "package deal," apparently at the request of Defendant's counsel Mr. Robinson.   The court in <u>Miller</u> held that hours spent in settlement negotiations are uniformly compensable.  575 F.Supp.2d at 28.   To the extent that billing submissions reflect a block entry for discussions involving severance and settlement, the Court has reduced those entries by 50%, recognizing that the time spent discussing the

settlement of attorneys' fees is compensable, whereas the time spent discussing Mr. Thompson's severance is not.  Accordingly, the Court concludes that billing entries related to severance and tax matters should not be compensable and recommends a reduction of $701, related to billing entries submitted by Attorney Christensen.

### 3.    Billing for Recovery of Relator's Share from the Government

Defendant objects to Plaintiffs' billing submissions relating to the recovery of relators' shares from the Government.[9]  Defendant argues that nothing in the language of the FCA supports charging a qui tam defendant for fees incurred by relators in negotiating the amount of the relators' shares with the Government.  (Def.'s Mem. in Resp. at 9) (citing 31 U.S.C. § 3730(d)).  Defendant also cites United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co., 41 F.3d. 1032, 1044-46 (6th Cir. 1994) and Miller, 575 F.Supp.2d at 26, noting that in those decisions, such billing submissions were non-compensable, because the defendant had no right to participate in the process and there was nothing to suggest that the defendant had prolonged the process or could have hastened its conclusion.  (Def.'s Mem. at 9.)

Plaintiff responds that the question of whether all such fees are recoverable is unsettled in this jurisdiction.  However, Plaintiff cites to the language of the FCA, which provides that "All such expenses, fees and costs shall be awarded against the Defendant," 31 U.S.C. §§ 3730(d)(1) & (2), as evidence of Congressional intent that the defendant should bear all fees associated with a qui tam action, including those expended in relator share litigation.  Moreover, Plaintiff argues that decisions such as Taxpayers Against Fraud are contrary to the important public policy of

---

[9]Defendant points to the following examples of billing entries regarding the relator's share: "Review e-mail from client Neil on relator share guidelines and review guidelines." (BEW 5/17/06); "review of DOJ relator's share guidelines" (JGV 5/17/06); and "phone call with Brian Wojtalewicz re: relator share memo; draft revisions" (RPC 8/5/08).

encouraging settlements and avoiding protracted litigation.

The text of the qui tam attorney's fees provision, 31 U.S.C. § 3730(d), does not address the question of who pays for the relators' legal fees and costs incurred during the collateral litigation between the government and the relator.  The Court is aware of one case, <u>United States v. Stern</u>, 818 F.Supp. 1521-22 (M.D.Fla.1993), as modified by 932 F.Supp. 277, 278 (1993), in which the  defendants were required to compensate the relator for attorneys' fees incurred in connection with relator's share litigation, however that opinion devotes little analysis to the subject.  On the other hand, the Court finds that the Sixth Circuit's reasoning in <u>Taxpayers Against Fraud</u> is persuasive.  There, as here, the defendant had no right to participate in the relator's share negotiations between the relator and the government and nothing suggested that the defendant prolonged that process or could have hastened it.  <u>See</u> <u>also</u> <u>Miller</u>, 575 F.Supp.2d at 26-27 (citing <u>Taxpayers Against Fraud</u> with approval);  <u>United States ex rel. Poulton v. Anesthesia Assocs. of Burlington, Inc.</u>, 87 F.Supp.2d 351, 358 (D. Vt.2000) ("The time counsel spent on negotiation of the Relator's share is not appropriately billed to the defendants in this case.").   The greater weight of authority disallows compensation for attorneys' fees and costs incurred in connection with the relator's share negotiation/litigation.  Defendant here had no involvement in that collateral proceeding and should not be required to bear the expense.  Accordingly, the Court finds that counsel should not be compensated for attorneys' fees and costs incurred in connection with the relator's share and recommends a reduction of $14,183.  The reduction for this total sum should be apportioned as follows: a reduction of $7043 from Attorney Christensen's submissions; a reduction of $5050 from Attorney Wojtalewicz's submissions; and a reduction of $2090 from Attorney Vander Linden's submissions.

### 4.    Incomplete or Imprecise Billing

The fee petitioner must submit evidence that justifies the hours which counsel is claimed to have worked and "where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433.   Therefore, the fee petitioner should maintain billing records "in a manner that will enable the reviewing court to identify distinct claims." Id. at 436.  Defendant objects to numerous billing entries on grounds of vagueness.

In Miller, the court noted that the fee applicant must submit evidence that justifies the hours counsel claims to have worked:

> "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." [Hensley, 461 U.S. 424, 433.]  A "fee application need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney." Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319,1327 (D.C. Cir.1982) (internal quotation marks omitted).  But where time entries "are so vaguely generic that the Court cannot determine with certainty whether the activities they purport to describe were ... reasonable," the petitioner has not met his burden. Cobell v. Norton, 407 F.Supp.2d 140, 158 (D.D.C. 2005) (Lamberth, J.).  Instead, "the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." Nat'l Ass'n of Concerned Veterans., 675 F.2d at 1327.

Miller, 575 F.Supp.2d at 21.

The time records submitted contain numerous entries that are quite vague.  The following entries represent examples of vague billing submissions:

- RPC; 10/16/2005; "review and organize file and emails; $250;"

- RPC; 10/19/2005; "memo to file regarding conference call; $150;"

- RPC; 10/29/2005; "organize projects; review and revise memos; review emails from Brian and Neil; legal research re: CFR; $1,000;"

- RPC; 5/3/2006; "memo to file; $250;"

- RPC; 9/28/2006; "phone call with Jim Vander Linden re: conference call tomorrow; review emails; $500;"

- BEW; 5/9/2005; "review memos from Neil Thompson and respond; $200;"

- BEW; 5/12/2005; "wrote letter and email to clients; $200;"

- BEW; 6/2/2005; "conference with counsel and Neil; $800;"

- BEW; 6/2/2005; "conference with clients and counsel; $650;"

- BEW; 6/4/2008; "conference with Relator Thompson and Attorney Christensen; $350;"

- JGV; 7/6/2006; "review of various emails re: state actions; review copies of letter re: same; $500;"

- JGV; 7/24/2006; "telephone call from B.C. re: memo and conf. call; email to all; call to Dan; $500;"

- JGV; 8/2/2006; "participated in conference call from group; reviewed email re: meeting of group; $600;"

- JGV; 8/10/2006; "office conference with NT and ST re: research; telephone call BW re: same; $750;"

- JGV; 9/27/2006; "preparation for & participation in conference call; $750;"

- JGV; 9/28/2006; "various telephone calls & eamils regarding Dan B.; $500;"

- JGV; 9/29/2006; "preparation for & participation in conference call; $750;"

- JGV; 11/4/2007; "review of emails regarding various issues & status of claim; $250;"

- JGV; 11/6/2007; "work on file; $500."

To a limited extent, certain vague entries may be defined within the context of

surrounding billing entries, but overall, Plaintiffs' counsel should have maintained far more precise billing records.  Based on the Court's line-by-line review, the Court recommends a reduction in the amount of $40,000, or approximately 8% of the total requested amount for fees and costs, to account for billing entries so vague that the Court is unable to determine whether or not the hours claimed were justified.  This reduction is to be apportioned equally between Plaintiffs' counsel.

### 5.      Travel Time

Defendant asks the Court to cut in half attorneys' fees submitted by Attorneys Christensen and Vander Linden that are billed to travel.[10]  Plaintiffs' counsel responds that fee itemization for travel is limited and in each instance, the travel was less than ten miles. (Christensen Rep. Aff. at ¶ 5.)

The billing submissions reflecting travel are few, however, in most instances, because of the attorneys' block billing, it is impossible for the Court to determine the amount of time devoted to travel.  For instance, Attorney Christensen has submitted a billing entry dated 9/29/2006, stating, "travel to and attendance at phone call with BW, Jim Vander Linden, Dan, Neil and Bob re: Kelly Beudoin, Dan leaving Walgreens in Neil's office; $1000."  Similarly, Attorney Vander Linden has submitted an entry dated 11/14/2005, stating, "letter to AUSA & USAG re: service; travel to Ct. House to file amended complaint; letter to AUSA re: Agreement; $500."  Although there are limited entries that reflect travel, because the Court cannot apportion the amount of time expended on pure travel, the Court recommends an overall reduction of $1250, to be apportioned equally between Attorneys Christensen and Vander Linden.

---

[10]Defendant does not seek a reduction for travel entries submitted by Attorney Wojtalewicz.

### 6.      Relevance of Defendant's Legal Fees

Defendant argues that, for comparison's sake, its lower legal fees "may be relevant" to the Court's determination of the reasonableness of the fees submitted by Plaintiffs' counsel. Defendant avers that its legal fees, billed by the firm of Fulbright & Jaworski, LLP, were $191,864.83.  Plaintiffs respond that the amount of Defendant's legal fees is irrelevant to the Court's analysis of the reasonableness of Plaintiffs' counsel's fees and costs.

The Eighth Circuit has referenced differentials in bills and hourly rates between litigants in addressing appeals of the awards of attorney's fees. See Am Travelers Life Ins. Co. v. AIG Life Ins. Co., 354 F.3d 755, 759-61 (8th Cir. 2004) (upholding award of $66,839.76 in attorney's fees and costs in indemnification suit where, among other factors, defendant's attorney's charged only $38,554.29); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1220 (8th Cir. 1981) (affirming the award of $149,175 in attorney's fees and $13,000 in costs to plaintiff's counsel in an ERISA case, and noting, in passing, that the defendant's counsel spent close to one million dollars in attorney's fees).  In this case, however, the Court does not find Defendant's attorney's fees particularly relevant.  Plaintiffs' counsel took this case on a contingency fee basis, whereas Defendants' counsel billed Defendant on an hourly basis.  Plaintiffs' counsel spent considerable time preparing this case prior to filing suit and was therefore involved in the litigation for a much longer time period than Defendant's counsel.  In addition, Plaintiff's counsel had not previously handled litigation of this type.   It is not surprising that Plaintiffs' counsel incurred greater fees and costs.

Because the Court does not find the amount of Defendant's attorney's fees to be relevant to its analysis, it also precludes Plaintiffs' counsel from obtaining compensation for billing entries reflecting efforts to determine the billing rate(s) of Defendant's counsels.  Accordingly,

the following billing entries submitted by Attorney Wojtalewicz, totaling $350, should not be

compensable: 9/4/08 Searches for attorney fee charges of Fulbright and Jaworski firm in

Minnesota, $300; 9/5/08, Review CV and fee schedule of Fulbright and Jaworski attorneys in

Minneapolis, $50.

### C.    Appropriateness of Lodestar Enhancement or Reduction

Having calculated the lodestar amount, the Court must next determine whether an upward

or downward adjustment of that amount is warranted.  Reduction is warranted where "the

plaintiff has achieved only partial or limited success."  Hensley, 461 U.S. at 436-37.  In

analyzing that issue, the "degree of success obtained" is most important.  Id. at 437.  In the

Court's view, Plaintiffs obtained a high degree of success in this case, involving issues of first

impression.  The case involved meetings and communications with representatives of the United

States Attorney's Office and the Federal Bureau of Investigation; research into complex dual-

eligibility billing under Medicaid; and extensive document review and financial analysis.

Accordingly, the Court concludes that a deduction is not appropriate.

The Court next concludes that an upward adjustment is likewise unwarranted.  Given the

strong presumption that the lodestar amount is a reasonable fee, a court may increase that

amount only in "rare and exceptional cases."  Pennsylvania v. Del. Valley Citizens' Counsel for

Clean Air, 478 U.S. 546, 565 (1986).  Notwithstanding the diligent work of Plaintiffs' counsel,

the Court does not believe that this case merits an upward adjustment.  Generally, a lodestar

enhancement is appropriate when the lodestar rate is low relative to complexity of the case.

Hixon v. City of Golden Valley, 06-CV-1548 RHK/JSM, 2007 WL 4373111, at *5  (D. Minn.

Dec. 13, 2007) (citing Daggitt v. United Food & Commercial Workers Int'l Union, 245 F.3d

981, 990 (8th Cir. 2000)).  In Hixon, given a lodestar amount in excess of $400,000 in a Section

1983 action, this Court concluded that further enhancement was not 'necessary to the determination of a reasonable fee.' <u>Id.</u>  Here, the Court finds that while this case  involved novel issues, it also settled without trial and the significant expenses incurred leading up to trial. The Court therefore concludes that further enhancement is not necessary to the determination of a reasonable fee.

### D.      Costs

Defendant also objects to expense submissions submitted by Attorneys Christensen and Vander Linden.  Defendant argues that several expenses are not adequately documented and Defendant also objects to expense charges for the legal fees of other counsel as lacking in sufficient description or detail.  In his Reply Affidavit, Attorney Christensen submitted invoices for work performed by local counsel in other states.  (Doc. No. 72, Rep. Aff. of R. Christensen, Exs. B, C & D.)

As discussed herein, counsel may not be compensated for work involving states that did not participate in the this suit.  Accordingly, costs related to the work of local counsel in Indiana and New Mexico are non-compensable.

The Court recommends a reduction in satisfaction of costs in the total amount of $6661.68, comprising a deduction of $3543.50 from Attorney Christensen's submitted costs and a deduction of $3118.18 from Attorney Vander Linden's costs.

## III.    CONCLUSION

In analyzing whether the lodestars submitted by Plaintiffs' counsel were appropriately compensable, the Court considered the work of counsel in light of the <u>Johnson</u> factors and in light of the Court's concerns regarding duplicative work, imprecise billing and work unrelated to the litigation, among other things.  The Court examined each attorney's submission individually

36

and although it did not discuss each <u>Johnson</u> factor individually, the Court has noted several of the factors throughout this Report & Recommendation.  In particular, the Court finds that this case involved significant time, labor and novel legal questions; it involved some preclusion of work by the attorneys due to the acceptance of the case; and counsel, possessing ample experience, good reputation and strong ability, obtained a good settlement result. <u>See</u> <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).  The Court considered those factors, alongside Defendant's objections, in its careful review of counsels' records in order to arrive at a reasonable amount of compensation.

To summarize, the Court recommends the following reductions in fees and costs, based on the following grounds of objection:

**A.     FEES**

| | | | |
|---|---|---|---|
| 1. | Research | $      50 | |
| | | | – RPC: $50 |
| 2. | Duplicative effort | 5,000 | |
| | | | – RPC: $1,666; BEW: $1667; JGV: $1667 |
| 3. | Media | 3,450 | |
| | | | – RPC: $2,500; BEW: $850; JGV: $100 |
| 4. | Other states | 18,638 | |
| | | | – RPC: $7,698; BEW: $3,455; JGV: $7,485 |
| 5. | Severance/tax | 701 | |
| | | | – RPC: $701 |
| 6. | Relator's share | 14,183 | |
| | | | – RPC: $7,043; BEW: $5,050; JGV: $2,090 |
| 7. | Imprecise billing | 40,000 | |
| | | | – RPC: $13,333; BEW: $13,333; JGV: $13,334 |
| 8. | Travel | 1,250 | |
| | | | – RPC: $625; JGV: $625 |
| 9. | Defendant's fees | 350 | |
| | | | – BEW: $350 |
| | | _____ | |
| **Total fee reduction** | | **$83,622** | |

**B.     COSTS**

RPC: $3,543.50
JGV: $3,118.18

**Total costs reduction         $6,661.68**


**C.     TOTAL RECOMMENDED REDUCTION:**

Fees   $83,622.00
Costs   $ 6,661.68
**$90,283.68**

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. No. 50) be **GRANTED**, in part,

and **DENIED,** in part, consistent with this Report & Recommendation.


Dated: April 29, 2009

s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **May 14, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.